IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 3:13cr156-MHT |
| DONALD SWIFT, JR. | ) | (WO) |

OPINION

Due to the complex nature of the U.S. Sentencing Guidelines calculation in this case and the court's upward variance, the court will issue this opinion, memorializing the reasons given at the sentencing hearing on April 24, 2014, for defendant Donald Swift, Jr.'s nine-year sentence of incarceration.

First, there was significant discussion of whether Swift's actions arose to the level of kidnapping or unlawful restraint, such that U.S.S.G. § 2A4.1, the kidnapping guideline, would apply.  The court could not find that Swift knowingly or intentionally restrained or kidnapped Shanyece Phelan.  His actions therefore failed to satisfy the definitions of either kidnapping or

unlawful imprisonment under Alabama law.  See 1975 Ala. Code § 13A-6-40(1).

However, the court did find that Swift used a firearm in connection with an aggravated assault.  Specifically, Swift shot the gun above Shanyece Phelan's head in the course of attacking her with dangerous weapons (that is, a baseball bat and a straightening iron), with intent to cause bodily injury.  The attack constitutes, at the least, assault in the second degree under Alabama law, a class C felony.  1975 Ala. Code § 13A-6-21(a)(2). A felonious assault using a dangerous weapon meets the Sentencing Guidelines definition of 'aggravated assault.' U.S.S.G. § 2A2.2, commentary (n.1).

The court therefore applied the cross-reference at U.S.S.G. § 2K2.2(c)(1), which requires the court to calculate the appropriate level under both Guidelines 2K2.1 (for unlawful possession of a firearm) and 2A2.2 (for aggravated assault) and to use the greater offense level.

Under the aggravated-assault guideline, the base-offense level is 14. The court applied the enhancement for discharge of a firearm, Guideline 2A2.2(b)(2)(A), and added five levels.

In addition, Guideline 2A2.2(b)(3) considers the seriousness of the injury that the victim sustained. The court also found that Shanyece Phelan's injuries were of such an extreme degree to be more serious than "serious bodily injury," but did not rise to the level of permanent or life-threatening bodily injury. Therefore, the court would have added six levels for this conduct. However, Guideline 2A2.2(b)(3) would permit the court to add only five levels, since Swift may receive no more than ten levels for use of a firearm and degree of bodily injury combined.

The total calculation under the aggravated-assault guideline was therefore 24 levels, that is, 14 plus 5 plus 5.

Turning to firearm Guideline 2K2.1, the court determined that the base-offense level was 20, due to

3

Swift's previous felony conviction for a crime of violence.

The court considered the third firearm as relevant conduct. According to U.S.S.G. § 1B1.3, the third firearm must be included in determining the offense level if it was part of the same course of conduct as the count of conviction. Under United States v. Maxwell, 34 F.3d 1006 (11th Cir. 1994), to determine whether two acts were part of the same course of conduct, the court must "evaluate the 'similarity, regularity and temporal proximity between'" two offenses. Id. at 1011. The court credited the testimony of Angela Phelan, Shanyece Phelan's mother, that Swift carried a firearm with him at all times. Furthermore, Swift acquired the third gun immediately after he got out of jail. Therefore, Swift's gun ownership was essentially continuous, in that he had a gun for all periods that he was able to possess a gun. The only reason that there was any hiatus in gun ownership was Swift's incarceration, a fact outside his control.

4

Considering <u>United States v. Jones</u>, 367 Fed. Appx. 109 (11th Cir. 2010), as well as <u>United States v. Phillips</u>, 516 F.3d 479 (6th Cir. 2008), and the cases cited therein, the court found that the third firearm was possessed as a part of the same course of conduct as the possession of the other two.  It would be different if there had been a period when Swift had the opportunity to have a gun and did not have one.  But this case does not present that situation.

The court therefore applied the two-level enhancement under U.S.S.G § 2K2.1(b)(1)(A) for possession of three firearms, as well as the four-level enhancement under Guideline 2K2.1(b)(6)(B) for use of the firearm in connection with another felony offense, that felony offense being assault in the second degree.

Under the firearm guideline, the offense level was 26, that is, 20 plus 2 plus 4.  Since the firearm guideline resulted in a higher offense level, that offense level applied. U.S.S.G. § 2K2.1(c)(1).

5

After a three-level reduction for acceptance of responsibility under Guideline 3E1.1, Swift's offense level was 23, leading to a guideline range of 57-71 months.

The court decided to vary upward in this case. Swift's treatment of Shanyece Phelan was so brutal as to be tantamount to torture. In court, she testified that Swift beat her extensively with fists and a baseball bat. He put cigarettes out on her face and burned her stomach with a straightening iron. He shot a gun in her direction. And when she begged for him to stop, he would not and instead continued to brutalize her. The court cannot imagine the extent of physical and psychological trauma that this torture would cause, but it is certainly of a level of seriousness far beyond that of many felony offenses which are committed in connection with a firearm.

The court was particularly troubled that, since the firearm guideline controlled, there was no provision in the guidelines calculation that adequately reflects the

level of brutality and suffering that Shanyece Phelan experienced at the hands of Swift. The court therefore varied upward by four levels. This resulted in an offense level of 27, with a guideline range of 87-108 months.

For the reasons above, the court sentenced Swift to 108 months (that is, nine years) of incarceration, followed by a three year term of supervised release.

DONE, this the 25th day of April, 2014.

                                                /s/ Myron H. Thompson
                                         UNITED STATES DISTRICT JUDGE